STATE OF MINNESOTA, *ex rel.* Edward D. Chapman, *vs.* STATE BOARD OF MEDICAL EXAMINERS.

34   387<br>79   84

December 24, 1885.

Constitution—Power of Respondent to Revoke Certificates.—Laws 1883, *c.* 125, § 9, entitled "An act to regulate the practice of medicine in the state of Minnesota," provides that "the board of examiners may refuse certificates to individuals guilty of unprofessional or dishonorable conduct, *and may revoke certificates for like causes.*" *Held,* that the revocation of such certificates is not an exercise of *judicial* power, and hence it may be constitutionally vested in the State Board of Medical Examiners.

Writ of prohibition.
*John B. & W. H. Sanborn* and *W. G. White,* for relator.

*William J. Hahn,* Attorney General, and *James M. Martin,* for respondent.

MITCHELL, J. The relator, being a graduate in medicine, and having received from the University of Pennsylvania a diploma and the degree of M. D., on the 26th of January, 1884, presented his diploma to the State Board of Medical Examiners, which issued to him its certificate to that effect, pursuant to the provisions of Laws 1883, c. 125, entitled "An act to regulate the practice of medicine in the state of Minnesota." In June, 1885, complaint having been made to the board that relator had, since the issue of such certificate, been guilty of dishonorable and unprofessional conduct, it caused a copy of the complaint to be served upon him, together with a notice citing him to appear before it at a time and place named and show cause why his certificate should not be revoked and cancelled, and he be debarred from the practice of medicine in this state. The relator, having obtained a writ of prohibition against the board, asks to have it made absolute.

The board was assuming to act under section 9 of the statute referred to, which reads : "The board of examiners may refuse certificates to individuals guilty of unprofessional or dishonorable conduct, *and may revoke certificates for like causes."* The relator concedes or takes for granted that this section assumes to give the board power to revoke certificates issued to graduates of medicine who have diplomas, as well as those issued to non-graduates who are examined by the board as to their qualifications. Hence we assume, without further consideration, that such is its proper construction.

The sole point made by relator is that this act, in so far as it assumes to give the board power to *revoke* certificates, is unconstitutional. He concedes the right of the legislature, in the exercise of the general police power of the state, to prescribe such reasonable rules and regulations as to the qualifications of medical practitioners as are calculated to exclude incompetent or dishonest men from the profession, and, to that end, to require every one who desires to practise medicine and surgery to first obtain a license or certificate, and that the legislature may also vest in a board of examiners, or other administrative or executive body or board, the power to inquire and

determine whether applicants possess the prescribed qualifications, and to issue or refuse to issue them certificates in accordance with the result of such examination. Neither does relator deny the power of the legislature to provide for the revocation of such certificates for cause. Indeed, at this day the power to do these things cannot be seriously questioned,—certainly not successfully disputed. *State* v. *State Medical Examining Board*, 32 Minn. 324.

The sole ground of relator's objection to this provision of the act, and the only one we will consider, is—*First*, the license to practise medicine, when once granted, is property; *second*, that the revocation of this license is the exercise of *judicial* power, which cannot be vested in any executive or administrative board, or even in the legislature itself, but only in the courts in which, by the constitution, all judicial power is vested; *third*, and hence to assume to vest this power in this board is to deprive a person of his property "without due process of law," which is forbidden by section 7, article 1, of the constitution of the state.

The radical fallacy in this chain of argument is the assumption that the revocation of such a license is the exercise of judicial power. "Due process of law," or "the law of the land," (which means the same thing,) is not necessarily judicial proceedings. Private rights and the enjoyment of property may be interfered with by the legislative or executive, as well as the judicial, department of the government. When it is declared that a person shall not be deprived of his property without "due process of law," it means such an exercise of the powers of government as the settled maxims of law permit and sanction, under such safeguards as these maxims prescribe for the class of cases to which the one in question belongs. Cooley, Const. Lim. 356. This constitutional guaranty, which is as old as Magna Charta, as it is found in this or an equivalent form in every American constitution, is intended to secure the citizen from the arbitrary exercise of the powers of government, unrestrained by the established principles of right and distributive justice. The validity of a statute which interferes with a man's enjoyment of his property is to be tested by those principles of civic and constitutional protection which have become established in our system of laws. *Bank of Columbia*

v. *Okely,* 4 Wheat. 235 ; *Murray's Lessee* v. *Hoboken Land Co.,* 18 How. 272; *Davidson* v. *New Orleans,* 96 U. S. 97; Cooley, Const. Lim. 355.

Taxation, in one sense, takes a man's property, yet it was never suggested that proceedings to enforce and collect a tax must be judicial. So, the exercise of the general police power of the state often materially interferes with or restricts a person's enjoyment of his property, yet it was never heard that, for that reason, it was the exercise of judicial power, or that, if not exercised by judicial proceedings in court, it was not "due process of law," or "the law of the land."

It has never been held that the granting, or refusing to grant, such a license as this was the exercise of judicial power, and in fact this is not claimed in this case; and there is no possible distinction in this respect between refusing to grant a license and revoking one already granted. Both acts are an exercise of the police power. The power exercised and the object of its exercise is, in each case, identical, viz., to exclude an incompetent or unworthy person from this employment. Therefore the same body which may be vested with the power to grant, or refuse to grant, a license, may also be vested with the power to revoke. The statutes of all the states are full of enactments giving the power to revoke licenses of dealers, innkeepers, hackmen, draymen, pawnbrokers, auctioneers, pilots, engineers, and the like, to the same bodies, boards, or officers who are authorized to issue them, such as city councils, county commissioners, selectmen, boards of health, boards of excise, etc. The constitutionality of such laws, as a valid exercise of the police power, has often been sustained, and indeed rarely questioned. Cooley, Const. Lim. 283 and 597, and cases cited.

The only authorities cited by relator to support his contention are cases in which it has been held that the removal of an attorney by a court from his office as an attorney of the court, *like the order of his admission,* is the exercise of judicial power, and is a judgment of the court. But these cases are not at all analogous to the one at bar. They rest expressly upon the ground that attorneys are *officers of the court,* whose duties relate almost exclusively to proceedings of a ju-

dicial nature, and that at common law it rested exclusively with a court to determine who is qualified to become one of its officers, and for what cause he ought to be removed, and hence that attorneys could only be removed from office for misconduct ascertained and declared by judgment of the court. *Ex parte Secombe,* 19 How. 9; *Ex parte Garland,* 4 Wall. 333.

Whether the proceedings instituted by this board to determine whether this license should be revoked are even *quasi* judicial, so that a writ of prohibition would lie, is a question that may admit of serious doubt. But as the point is not raised by respondents, and the writ must in any event be quashed on other grounds, we have not considered it.

Writ quashed.