# CZARRA v. BOARD OF MEDICAL SUPERVISORS OF THE DISTRICT OF COLUMBIA.

---

PHYSICIANS; LICENSES, REVOCATION OF; PROFESSIONS, PRACTICE OF; UN-
  PROFESSIONAL CONDUCT; STATUTES, CONSTRUCTION OF; POLICE POWER.

1. Where the license of a practising physician is revoked by the board of medical supervisors of this District for the alleged violation of the act of Congress of June 3, 1896, 29 Stat. at L. 198, chap. 313, regulating the practice of medicine and surgery in this District, based upon causes arising subsequent to the act, and not for the violation of

any regulations made by the board, it cannot properly be claimed in his defense that he was convicted under an *ex post facto* law.

2. Where a decision of the board of medical supervisors of this District, revoking the license of a physician, is reversed by this court on the ground of the insufficiency of the complaint, there is nothing to prevent the filing of a new and effective complaint against him based upon the same acts. Under such circumstances, whether the proceeding be considered a criminal one or not, his first conviction cannot be said to be a final one, and therefore a defense, on the second trial, of former jeopardy, cannot avail him.

3. Congress has the power to regulate the practice of medicine and surgery in this District, and had the power to prescribe the reasonable qualifications required of practitioners by the act of Congress of June 3, 1896, 29 Stat. at L. 198, chap. 313, as well as to create, as it did by that act, a special tribunal, and invest it with the power to revoke the licenses of practitioners for sufficient cause; and sufficient cause exists in the employment of fraud or deception in passing the examinations required, in chronic inebriety, the practice of criminal abortion, or in case of conviction involving moral turpitude, as declared in that act.

4. The conviction of a physician of distributing obscene and indecent printed matter in this District is a sufficient ground for the revocation of his license by the board of medical supervisors, under the authority granted that board by the act of Congress of June 3, 1896, 29 Stat. at L. 198, chap. 313, regulating the practice of medicine and surgery in this District.

5. In defining a punishable offense, words may properly be used by the legislature, which have a settled meaning, or which indicate offenses well known to and defined by the common law, reasonable certainty being all that is required; and liberal effect is always to be given to the legislative intent, when possible; but where the legislature declares an offense in words of no determinate signification, or its language is so general and indefinite that it may embrace not only acts commonly recognized as reprehensible, but also others which it is unreasonable to presume were intended to be made criminal, the statute will be declared void for uncertainty. (Following *Stoutenburgh* v. *Frazier*, 16 App. D. C. 229, 48 L. R. A. 220.)

6. "Unprofessional or dishonorable conduct" is not defined by the common law, and the words have no common or generally accepted signification; and what conduct may be of either kind is a matter of opinion only.

7. The test to determine whether a statute defining an offense is void for uncertainty is whether the language may apply not only to a particular act about which there can be little or no difference of

opinion, but equally to other acts about which there may be radical differences, thereby devolving upon the court the exercise of arbitrary power of discriminating between the several classes of acts.

8. The police power of every State warrants the requirement of the possession of all reasonable qualifications by those who seek to engage in the public practice of medicine, and, incidentally, the extension of a wide discretion to those agencies charged with the duty of inquiry and determination; but the exercise of the same wide discretion cannot be extended to a case where, when one has been regularly admitted, the revocation of his license is sought under another and independent provision of the same statute.

9. The right to practise a profession, when regularly obtained by compliance with the law, becomes a valuable privilege or right in the nature of property, and is safeguarded by the principles that apply in the protection of property lawfully acquired, and these are of the same general nature, though not in all particulars, as those which safeguard one prosecuted for the commission of a minor offense.

10. So much of the act of Congress of June 3, 1896, 29 Stat. at L. 198, chap. 313, as authorizes the board of medical supervisors in this District to revoke the license of a medical practitioner upon conviction of "unprofessional or dishonorable conduct," independently of other offenses for which a license may be revoked, is void for uncertainty; it being a matter of opinion whether any given act constitutes such conduct; and an order of the board is void which revokes the license of a physician on a complaint charging him with such conduct in that he circulated obscene matter.

No. 1512 Submitted March 22, 1905. Decided May 2, 1905.

HEARING on an appeal by a practising physician from an order of the board of medical supervisors of the District of Columbia, revoking his license to practise within the District of Columbia. *Reversed.*

The COURT in the opinion stated the case as follows:

This is an appeal from an order of the board of medical supervisors of the District of Columbia, made January 24, 1905, revoking the license of Sigmund A. Czarra to practise medicine and surgery in said District, because of his unprofessional and dishonorable conduct.

The act of Congress approved June 3, 1896, 29 Stat. at L. 198, chap. 313, is a general one regulating the practice of medicine and surgery and the licensing of practitioners thereof in the District of Columbia. It creates three separate boards, each consisting of five members. One of these boards shall "be composed of five physicians in good standing, adherents to the regular system of medical practice;" another of "adherents to the homeopathic system of medical practice," and the third of "adherents to the eclectic system of medical practice." Provision is made for the careful and impartial selection of the members of these several boards.

The board of medical supervisors consists of the presidents of the respective boards of examiners above mentioned, and of two other persons selected by the District commissioners, one of whom shall be learned in the law.

Applications for license must be made to this board, which shall certify applicants for examination by the respective boards who are adherents to the system of medicine which the applicant desires to practise. But no applicant shall be so certified until satisfactory proof is furnished that he or she is of good moral character, over twenty-one years of age, and the possessor of a diploma, issued by some medical college duly authorized, conferring the degree of Doctor of Medicine. Passing by other sections of the act, we come to section 10, which provides that the board of medical supervisors "may, by a vote of four members, refuse to grant or may revoke a license, and may cause the name of any person to be removed from the record of the supreme court of the District of Columbia, and from the register of the health office for any of the following causes, to wit: The employment of fraud or deception in passing the examinations provided for in this act, chronic inebriety, the practice of criminal abortion, conviction of crime involving moral turpitude, or of *unprofessional* or dishonorable conduct." Appeals from such orders of removal lie to the court of appeals of the District, whose decision is made final.

Section 13 provides that anyone practising medicine or surgery or publicly professing to do so, without license, or after

his license or registration has been canceled by order of said board of supervisors, "shall be deemed guilty of a misdemeanor," and upon conviction thereof shall be punished by fine or imprisonment or both.

The appellant was first brought before the board of medical supervisors in January, 1904, and his license ordered revoked upon a complaint made of unprofessional and dishonorable conduct in the distribution of obscene literature. The obscene literature consisted of a pamphlet purporting to relate to the cause, prevention, and cure, among other things, of venereal and secret diseases, and of certain filthy and indecent habits and practices. Upon appeal to this court the order was reversed because of the insufficiency of the complaint. *Czarra v. Medical Supervisors,* 24 App. D. C. 251.

On January 11, 1905, another complaint was made against said Czarra, charging him with unprofessional and dishonorable conduct in that he "did distribute, deposit, or place, or cause to be distributed, deposited, or placed, in the vestibules and on the door-steps of various residences in the city of Washington, and in the District of Columbia aforesaid, a certain circular, book, or pamphlet containing certain obscene, lewd, and lascivious words, language, statements, and matter, a copy of which is hereto attached as part hereof," etc. The attached pamphlet is identical with that referred to in the former complaint.

Due notice was given to the party, and he appeared by counsel before the board at the time designated. Czarra entered a plea to the jurisdiction to proceed against him, on the following grounds, briefly stated: 1. The act of Congress, in so far as it purports to convey authority to revoke his license for alleged unprofessional or dishonorable conduct, is void for uncertainty. 2. Because said board had not, prior to the commission of the alleged offense, established any rules defining unprofessional or dishonorable conduct, and any such made since are *ex post facto.* 3. Because the accused has been once tried and convicted of the same offense, and cannot be again put in jeopardy.

The plea was overruled, and the appellant was duly tried

and found guilty, whereupon the order appealed from was regularly adopted and entered. The proceedings on appeal are in regular form and proper time.

*Mr. Mason N. Richardson* for the appellant.

*Mr. Andrew B. Duvall,* Corporation Counsel, and *Mr. A. Leftwich Sinclair,* Assistant, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The last two grounds of the plea to the jurisdiction are without merit. No question of an *ex post facto* law can arise, because the conviction was had upon the law previously enacted by Congress, and not upon any regulations of the board of medical supervisors made thereunder.

Nor is there any case of former jeopardy. Without regard to the question whether the proceeding is criminal, it is sufficient to say that there has been no final judgment of conviction or acquittal. The former decision was reversed because of the insufficiency of the complaint, and a new trial was the necessary consequence. The defect in the complaint being fatal, there was nothing to prevent the filing of a new and effective one.

2. That Congress had the power to regulate the practice of medicine and surgery in the District of Columbia, and to prescribe the reasonable qualifications required by this act, as well as to create a special tribunal, and invest it with the power to revoke the licenses of practitioners for sufficient cause, there can be no doubt. Nor can there be any reasonable doubt that sufficient cause exists in the employment of fraud or deception in passing the examinations required, in chronic inebriety, the practice of criminal abortion, or in case of conviction of crime involving moral turpitude, as declared in the act. Fraudulent conduct in passing the examination, and the practice of criminal abortion, might well be made separate criminal offenses, if not

already so, and punished as such; and probably chronic inebriety also.

3. The single question to be determined is whether, independently of the causes mentioned, "unprofessional or dishonorable conduct," as declared in the act, are sufficiently specific and certain to warrant a conviction thereof and the exercise of the power of revocation by the board of medical supervisors.

This question was fully argued on the former appeal, but not decided. Speaking for this court at the time, Mr. Justice Anderson of the supreme court of the District, who had been regularly designated to sit during the temporary absence of Chief Justice Alvey, said:

"Without expressing any opinion on this point in a case so radically defective as the present, and in which the expression of an opinion by us might possibly be characterized as *obiter dictum,* we desire to call the attention of the authorities to the fact that grave doubt is entertained as to the power of Congress to delegate to the board of medical supervisors, or to any other similar body, the authority to determine what shall constitute 'unprofessional or dishonorable conduct' in a medical practitioner, so far as to render such a practitioner guilty of a criminal offense if he attempts to continue in the practice of his profession after having been adjudged guilty of such conduct by a board of medical supervisors. Certainly, it would seem more appropriate that Congress itself    *    *    *    should specifically define what shall constitute 'unprofessional or dishonorable conduct' for the purpose of this legislation, than leave so vital a subject to the possible caprice of any board of supervisors." *Czarra* v. *Medical Supervisors,* 24 App. D. C. 251.

Congress has not amended the act, and, instead of indicting and obtaining the conviction of the appellant of the public distribution of printed matter, obscene and indecent, and thus furnishing an undoubted ground for the revocation of his license, the original complaint has been renewed in a form which now compels the decision of the question concerning which grave doubt has been intimated.

In all criminal prosecutions the right of the accused to be informed of the nature and cause of the accusation against him is preserved by the 6th Amendment. In order that he may be so informed by the indictment or information presented against him, the first and fundamental requisite is that the crime or offense with which he stands charged shall be defined with reasonable precision. He must be informed by the law, as well as by the complaint, what acts or conduct are prohibited and made punishable. In the exercise of its power to regulate the conduct of the citizen, within the constitutional limitations, and to declare what shall constitute a crime or punishable offense, the legislature must inform him with reasonable precision what acts are intended to be prohibited. "Every man should be able to know with certainty when he is committing a crime." *United States* v. *Reese,* 92 U. S. 214, 220, 23 L. ed. 563, 565. This obvious duty must be performed by the legislature itself, and cannot be delegated to the judiciary. It may, doubtless, be accomplished by the use of words or terms of settled meaning, or which indicate offenses well known to and defined by the common law. Reasonable certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible. But when the legislature declares an offense in words of no determinate signification, or its language is so general and indefinite as that it may embrace within its comprehension, not only acts commonly recognized as reprehensible, but others also which it is unreasonable to presume were intended to be made criminal, the courts, possessing no arbitrary discretion to discriminate between those which were and those which were not intended to be made unlawful, can do nothing else than declare the statute void for its uncertainty. *United States* v. *Reese,* 92 U. S. 214, 221, 23 L. ed. 563, 566. As was said in that case: "It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legis-

lative department of the government." The general principle was applied in the following cases:

*Stoutenburgh* v. *Frazier,* 16 App. D. C. 229, 234, 48 L. R. A. 220. In that case a party convicted in the police court, under an act of Congress authorizing the punishment of "all suspicious persons," was discharged on a writ of habeas corpus.

*State* v. *Gaster,* 45 La. Ann. 636, 638, 12 So. 739. The statute declared void in that case provided: "If any judge, justice of the peace, sheriff, or any other civil officer shall be guilty of any misdemeanor in the execution of either of their respective offices, he shall on conviction suffer fine," etc.

*Ex parte Jackson,* 45 Ark. 158, 164. The statute annulled in that case made it a misdemeanor to "commit any act injurious to the public health or public morals, or to the perversion or obstruction of public justice or the due administration of the laws."

In *Augustine* v. *State,* 41 Tex. Crim. Rep. 59, 76, 96 Am. St. Rep. 765, 52 S. W. 77, "mob violence" was held to be uncertain, and to leave too much to the discretion of the court. See also *Johnston* v. *State,* 100 Ala. 32, 34, 14 So. 629; *State* v. *Partlow,* 91 N. C. 550, 553, 49 Am. Rep. 652; *State* v. *Mann,* 2 Or. 238; *Louisville & N. R. Co.* v. *Com.* 99 Ky. 132, 33 L. R. A. 209, 59 Am. St. Rep. 457, 35 S. W. 129.

"Unprofessional or dishonorable conduct," for which the statute authorizes the revocation of a license that has been regularly obtained, is not defined by the common law, and the words have no common or generally accepted signification. What conduct may be of either kind remains, as before, a mere matter of opinion. In the absence of some specification of acts by the law-making power, which is alone authorized to establish the standard of honor to be observed by persons who are permitted to practise the profession of medicine, it must, in respect of some acts at least, remain a varying one, shifting with the opinions that may prevail from time to time in the several tribunals that may be called upon to interpret and enforce the law. As has been said by the Supreme Court of the United States in a case involving the same principle, the question must

be reduced to one of fact, as contra-distinguished from mere opinion. *American School of Magnetic Healing* v. *McAnnulty,* 187 U. S. 94, 106, 47 L. ed. 90, 95, 23 Sup. Ct. Rep. 33. In that case an injunction was granted restraining a postmaster from refusing to deliver mail to the appellant, under an order of the Postmaster General authorizing him so to do, founded on U. S. Rev. Stat. § 3929, U. S. Comp. Stat. 1901, p. 2686, which authorizes the Postmaster General to withhold from the addressee, and return to the senders, all letters induced by any scheme or device for obtaining money through the mails by means of false and fraudulent pretenses, etc. The appellant was a chartered institution, engaged, as it alleged, not only in treating people afflicted with ills, but also in the business of teaching and educating others in the practical science of healing. Its system was alleged to be "founded 'almost exclusively on the physical and practical proposition that the mind of the human race is largely responsible for its ills, and is a perceptible factor in the treating, curing, benefiting, and remedying thereof. And that the human race does possess the innate power, through proper exercise of the faculty of the brain and mind, to largely control and remedy the ills that humanity is heir to, and (complainants) discard and eliminate from their treatment what is commonly known as divine healing and Christian Science, and they are confined to practical scientific treatment emanating from the source aforesaid,'" After discussing the prevalent differences of opinion with respect to opposing systems of ordinary medical treatment, Mr. Justice Peckham, speaking for the majority of the court, said: "Other instances might be adduced to illustrate the proposition that these statutes were not intended to cover any case of what the Postmaster General might think to be false opinions, but only cases of actual fraud in fact, in regard to which opinion formed no basis. It may perhaps be urged that the instances above cited   *   *   *   do not fairly represent the case now before us, but the difference is one of degree only. It is a question of opinion in all the cases, and although we may think the opinion may be better founded and based upon a more intelli-

gent and a longer experience in some cases than in others, yet after all it is in each case opinion only, and not existing facts with which these cases deal. There are, as the bill herein shows, many believers in the truth of the claims set forth by complainants, and it is not possible to determine as a fact that those claims are so far unfounded as to justify a determination that those who maintain them and practise upon that basis obtain their money by false pretenses within the meaning of these statutes. The opinions entertained cannot, like allegations of fact, be proved to be false, and therefore it cannot be proved as matter of fact that those who maintain them obtain their money by false pretenses or promises, as that phrase is generally understood, and, as in our opinion, it is used in these statutes."

If a licensed practitioner of the District of Columbia were to engage in a similar practice and advertise a similar treatment, there can be little doubt of the opinion in respect of his conduct that would be entertained by the adherents to the several reputable systems of medical practice recognized by the act of Congress. And it is quite probable that the board of medical supervisors would agree with the Postmaster General that it amounted to a case of false pretenses, and would therefore regard the act as constituting both unprofessional and dishonorable conduct within the meaning of the act under consideration.

Doubtless all intelligent and fair-minded persons would agree in the opinion of the board of medical supervisors that the act charged against the appellant in the case at bar amounted to conduct both unprofessional and dishonorable. But this is not the test of the validity of the particular clause of the statute. The underlying question involved in all cases that may arise is whether the courts can uphold and enforce a statute whose broad and indefinite language may apply not only to a particular act about which there would be little or no difference of opinion, but equally to others about which there might be radical differences, thereby devolving upon the tribunals charged with the enforcement of the law the exercise of an arbitrary power of discriminating between the several classes of acts.

As this is not strictly a case of prosecution for crime, it is contended that the doctrine above enounced has no application, but that the appellant's case must be governed by the more liberal rule which applies in the enforcement of statutes generally regulating admission to practise under license. We concur in the view that statutes requiring proof of general qualifications, such as of good moral character, and the like, before one can be granted a license to practise medicine, stand upon a different ground from those creating offenses and providing penalties therefor upon conviction. Such statutes, in general, are undoubtedly valid and enforceable. The police power of every State warrants the requirement of the possession of all reasonable qualifications by those who seek to engage in the public practice of medicine, and, incidentally, the extension of a wide discretion to those agencies charged with the duty of inquiry and determination. But we do not agree that the exercise of the same wide discretion can be extended to a case where, when one has been regularly admitted, the deprivation or forfeiture of his license is sought under another or an independent provision of the same statute. The right to practise the profession, once regularly obtained by compliance with the law, becomes a valuable privilege or right in the nature of property, and is safeguarded by the principles that apply in the protection of property lawfully acquired. And these are of the same general nature, though not in all particulars, as those which safeguard him when prosecuted for the commission of a minor offense. This conclusion has the support of the following well-considered cases. *Ex parte McNulty,* 77 Cal. 164, 170, 11 Am. St. Rep. 257, 19 Pac. 237; *Matthews* v. *Murphy,* 23 Ky. L. Rep. 750, 54 L. R. A. 415, 63 S. W. 785. And in the *American School of Magnetic Healing* v. *McAnnulty,* 187 U. S. 94, 47 L. ed. 90, 23 Sup. Ct. Rep. 33, the Supreme Court made no distinction between a civil proceeding relating to the forfeiture of a privilege in the nature of property, and a criminal prosecution founded on the same acts.

Moreover, while not itself a criminal prosecution, the proceeding to revoke the license is, nevertheless, a preliminary

step thereto. The statute provides a penalty for practising medicine after the revocation of a license, and in a prosecution therefor the order of revocation must necessarily be held to be conclusive evidence of the fact.

In several cases relied on by the appellee, State statutes have been upheld which authorize the revocation of licenses for "gross immorality," "unprofessional, dishonorable, or immoral conduct," and the like. *Meffert* v. *State Bd. of Medical Registration,* 66 Kan. 710, 72 Pac. 247; *State ex rel. Chapman* v. *State Medical Examiners,* 34 Minn. 387, 26 N. W. 123; *State Bd. of Health* v. *Roy,* 22 R. I. 538, 48 Atl. 802; *People, Use of State Bd. of Health* v. *McCoy,* 125 Ill. 289, 17 N. E. 786; *State ex rel. Baldwin* v. *Kellogg,* 14 Mont. 426, 36 Pac. 957. In no one of these cases, however, was the question under consideration here, raised, discussed, or decided. The question discussed in each, and upon which the decisions apparently turned, was the power of the State to enact regulations of the kind as the conditions of admission to practise medicine. Of this, as heretofore observed, there can be no doubt.

The case of *State ex rel. Baldwin* v. *Kellogg,* 14 Mont. 426, 36 Pac. 957, is peculiar, and, in our opinion, well illustrates the soundness of the view that the statute itself should indicate the facts which constitute unprofessional or dishonorable conduct, and not leave them to be ascertained and settled by either medical boards or the courts. The license had been revoked in that case by the board of medical supervisors, upon proof that the appellant had been seen to deposit in a furnace and destroy a headless foetus, and when questioned had refused to make any statement or to explain his conduct. Two of the district courts, in succession, held with the trial board, that his conduct was unprofessional and dishonorable. On final appeal one member of the court concurred with the inferior tribunals, but the majority, being of a contrary opinion in respect of the necessary conclusion to be deduced from the facts, reversed the order revoking the license.

For the reasons heretofore given, we are of the opinion that the order appealed from must be reversed, with costs, and the

cause remanded, with directions to dismiss the complaint. It
is so ordered.                                          *Reversed.*