(January 20, 1906.)

# RAAF v. STATE BOARD OF MEDICAL EXAMINERS.
## [84 Pac. 33.]

STATE MEDICAL LAW—BOARD OF MEDICAL EXAMINERS—POWERS QUASI JUDICIAL—APPLICANTS FOR EXAMINATION—ACTION OF BOARD IN REFUSING LICENSE MAY BE REVIEWED ON CERTIORARI.

1. Under act approved March 3, 1899 (Sess. Laws 1899, 345), known as the state medical law, the state board of medical examiners, in the the examination of applicants for a license to practice medicine and surgery, is required to exercise judgment and discretion in granting or refusing a license to such applicant, and in so doing exercises quasi judicial functions.

2. The state medical law contains no provision granting the right of appeal from the action of the board of examiners in refusing a license to an applicant, but by the terms of section 9 of the act it is provided that the action of the board in refusing to grant a license under the provisions thereof may be reviewed by the district court on *certiorari*, provided proceedings therefor be instituted within ten days after notice of such refusal.

3. By conferring the right to have the action of the board in refusing to grant a license reviewed as provided in section 9 of the act, the legislature have indicated an intention to limit and confine the authority and jurisdiction of the courts in considering the action of the board to the procedure and scope of investigation and inquiry usually and ordinarily pursued and exercised by the courts in the issuance and consideration of writs of review.

4. The legislature has provided for a board of experts learned in medicine and surgery for the purpose of examining applicants for license to practice within this state, and the language of the medical act and the purposes and objects thereof preclude any inference that the legislature ever intended that a disappointed applicant might apply to the court and there have his answers re-examined, marked, graded and passed upon as to their correctness by the court.

5. The courts are open to compel action by the state board of medical examiners when they fail or refuse to act, and to review their authority where they have assumed to exercise powers not conferred, but the courts will not review and re-examine matters in which the board is called upon to exercise judgment and discretion and perform quasi judicial functions in reference thereto.

(Syllabus by the court.)

APPEAL from the District Court of the Fourth Judicial District. Honorable Lyttleton Price, Judge.

Plaintiff instituted proceedings in the district court for review and examination of the action and proceeding of the State Board of Medical Examiners in refusing to grant him a license to practice medicine and surgery within this state, and prayed that the court enter a judgment and decree declaring him rightfully entitled to practice his profession in this state. Judgment for defendant, the State Board of Medical Examiners. From the judgment and an order denying a motion for a new trial, plaintiff appealed. Affirmed.

The facts are stated in the opinion.

P. M. Bruner and Sullivan & Sullivan, for Appellant, cite
no authorities on the points decided.

Frank Martin and McFadden & Brodhead, for Respond-
ent.

Under the rule of law which has been declared by this
court and supported by the weight of authority, the findings
of the lower court arrived at from a consideration of conflict-
ing evidence will not be disturbed by this court where there
is any competent evidence to support the findings. (*Cham-
berlain v. Woodin,* 2 Idaho, 642, 23 Pac. 177; *State v. Hav-
erly,* 4 Idaho, 484, 486, 42 Pac. 506; *People v. Wong Chong
Suey,* 110 Cal. 117, 42 Pac. 420; *Frankfort v. Coleman,* 19
Ind. App. 368, 65 Am. St. Rep. 412, 49 N. E. 474; *Smith v.
Thomas,* 121 Cal. 533, 54 Pac. 71; *Meyer v. Great Western
Ins. Co.,* 104 Cal. 381, 38 Pac. 82.) The medical law does
not provide for any appeal from the action of the board and
that this court has held that where no appeal is provided for
by statute the proper remedy is by writ of review. (*Gans
v. Steele,* 7 Idaho, 143, 61 Pac. 286.) Upon a writ of review
the court will not consider the evidence upon which the in-
ferior tribunal acted for the purpose of deciding a question
of fact. (*Oregon Coal etc. Co. v. Coos County,* 30 Or. 308,
47 Pac. 851; *Smith v. City of Portland,* 25 Or. 297, 35 Pac.
665.) A review can only go to the question as to whether
the inferior tribunal or board has regularly pursued its au-
thority. (*Farmers' etc. Bank v. Board of Equalization of
Los Angeles,* 97 Cal. 318, 32 Pac. 312.) That a judgment
of a medical board as to the qualifications of an applicant
for a license by examination is largely, if not wholly, discre-
tionary and must of necessity be conclusive. (*Van Vleck v.
Board etc.* (Cal.), 48 Pac. 223, 224; *Keller v. Hewitt,* 109
Cal. 146, 41 Pac. 871.) When a board or tribunal is required
by law to pass upon and ascertain some fact, its decision is
final, unless some manner of review is provided for by law,
and then the manner provided for by law must be followed.
(*Spaulding v. North San Francisco Homestead Assn.,* 87 Cal.
40, 45, 24 Pac. 600, 25 Pac. 249; *Fairchilds v. Wall,* 93 Cal.

401, 29 Pac. 60.) The action of the board in fixing the grades of the plaintiff is not reviewable by the courts so far as facts are concerned. (*Iowa Eclectic etc. v. Schrader*, 87 Iowa, 659, 55 N. W. 24, 20 L. R. A. 355, 359.) It has also been held that the action of the commissioners in assessing the benefits to property of a special assessment was final and could not be inquired into by the courts. (*In re Westlake* (Wash.), 82 Pac. 279.) The determination of questions relating to the fitness of an individual to carry on an occupation requiring special knowledge, care and prudence, such as the practice of the professions of law and medicine, devolve everywhere upon boards of inspection composed of experts in the particular occupation in question. (*People v. Hasbrouck*, 11 Utah, 291, 39 Pac. 918.) In the case of *People v. Dental Examiners*, 110 Ill. 180, on page 185, the court says: "Whether a college be reputable or not is not a legal question but a question of fact. This question of fact was by the act submitted to the decision of the board, not in so many words, but by the plainest and most necessary implication. . . . . No other tribunal is authorized to investigate them. The act of ascertaining and determining what are the facts is in its nature judicial. It involves investigation, judgment and discretion and when such questions are decided by the board the decision is final." (*State v. Board of Health*, 53 N. J. L. 594, 22 Atl. 226, 227; *State v. Hathaway*, 115 Mo. 36, 47, 21 S. W. 1081; *Wilkins v. State*, 113 Ind. 514, 516, 16 N. E. 192.) Where a board has discretionary power, such as the state medical board, its action on matters of fact is not revisable by the courts. (*State etc. v. Gregory*, 83 Mo. 123, 136, 137, 53 Am. Rep. 565.)

AILSHIE, J.—The plaintiff, J. J. Raaf, applied to the State Board of Medical Examiners on October 1, 1904, for a license to practice medicine and surgery under the laws of this state, and on the fourth and fifth days of October, took the examination as provided by law. On the twenty-sixth day of October he was notified by the board that he had failed to pass the examination for the reason that he had only an-

swered fifty-five and seven-tenths per cent of the questions submitted to him. Thereafter and within ten days after receiving notice, the appellant filed his complaint in the district court in and for Blaine county, setting forth that he was a graduate from a regularly chartered and reputable medical college in good standing, and that he was a citizen of the United States and of the state of Idaho, resident within the county of Blaine, and that he had regularly made application to the board for examination, and had thereafter taken the examination. The real cause of his complaint against the board, and, in fact, the ground upon which he seeks relief, is set forth in paragraph 6 of his complaint and is as follows: "That on account of mistakes, .oversight, misplacement of papers, inadvertence, accident or some wrongful mishap or cause unintentional or otherwise, the said board did not deal with. judge of and decide concerning his answers to said questions submitted and his examination as it dealt with, judged of and decided concerning the answers and examinations of other applicants so then examined, and did not deal with, judge of and decide concerning his said answers and examination by same standard as used concerning the work of the other applicants and did not for his work adopt the reasonable and true standard or a just standard, but wrongfully and in manner above stated, or in some other unjust and wrongful manner applied to his work, answers and examination, a more rigid and exacting standard, with no such leniency as adopted toward the work of the other applicants then examined and with no just degree of leniency and with no proper regard to the nature of the questions, the time required and the reasonable, as to be expected, correctness of his answers. Nor did said board give to plaintiff such standing, grade and marking as was right, just and reasonable from the character of the questions and answers made by plaintiff and gave plaintiff an average of but fifty-five and seven-tenths per cent, when plaintiff, under the standard adopted for said examination and used for the work of other applicants, was entitled to an average and grade of over seventy-five per cent and to his license; that said rating of plaintiff was erroneous and

was unjust to plaintiff and was not made on equal basis with rating of the other applicants and was too low by more than twenty per cent.''

The defendant board answered denying the allegations of the complaint. On the trial of the case the plaintiff in the lower court introduced a number of exhibits containing the questions and answers of four of the applicants (including himself) who were examined at the same time and used the same list of questions as the plaintiff, showing the questions propounded to the applicants and the answers given thereto by each applicant and the markings or gradings given thereon by the board on the various subjects, and also showing what purported to be authoritative text-book answers to the several questions. The court also had before it the full list of questions and answers, together with the gradings or markings allowed and made by the board for the entire class of twenty-one applicants. After the hearing and examination of these various questions and answers and comparison with the purported text-book answers, the trial court made and rendered his decision wherein he found that the markings and gradings as given the applicant by the board made a general average of fifty-six and three-tenths per cent of correct answers. The court appears to have re-examined all the answers given by the plaintiff and re-marked and graded him on all the various branches, and from such re-rating, marking and grading, the court concluded that the plaintiff was entitled to a rating of sixty-nine per cent. The court, however, makes the following further finding: ''But the court further finds that on the subject of pathology the questions were of such a nature as to demand the knowledge of specialists, and were therefore not of the character contemplated by the statute. The court therefore rejects this branch in ascertaining plaintiff's average. On discarding this branch, plaintiff's standing is seventy-three and forty-eight one-hundredths per cent, which is less than the percentage required by statute.'' The court thereupon concludes as a matter of law ''that plaintiff did not pass said examination and is not entitled to practice medicine in the state of Idaho.'' After the findings and

conclusions were made the following judgment was entered: "It is therefore ordered, adjudged and decreed, that the action of said board be affirmed, and that it be further ordered and adjudged that plaintiff is not entitled to practice medicine and surgery within the state of Idaho."

The errors assigned by the appellant in this court are all directed to the action of the trial court in finding that appellant was entitled to certain ratings or gradings in the various branches in which he was examined. It is the appellant's contention that the grades allowed are too low and below that to which he was rightfully entitled. The respondent, the medical board, contends, upon the very threshold of this case, that the trial court had no jurisdiction to review and re-examine the answers given by the applicant and to re-grade and re-rate him thereon. The board contends that the matter of examining an applicant with a view to granting him a license to practice medicine and surgery within this state has been by the legislature referred to a board composed of persons learned in the profession, and for that reason specially fitted and qualified to examine and ascertain the qualifications and fitness of applicants to practice that profession in this state. The board contends that its determination as to the moral standing, qualifications and fitness of an applicant to entitle him to a license is final and not subject to reconsideration and re-examination or review by the courts.

It becomes necessary for us to first determine the question of jurisdiction, and if we should conclude that the position taken by counsel for the respondent is correct, the inquiry in this case would be concluded. The act of March 3, 1899, known as the state medical law, provides for a board of six members, each of whom shall be graduates of reputable medical colleges or universities in good standing, and learned and skilled in the theory and practice of medicine and surgery. Section 3 of the act authorizes each member of the board to administer oaths, and provides that "the board shall have authority to take testimony whenever the same is necessary in any manner relating to its official acts or duties." Section 6 authorizes and directs the board to examine all applicants

who were not legally engaged in the practice of medicine in this state at the time of the passage of the act. Before an applicant is entitled to take the examination, he must show that he is the rightful holder of a diploma which has been issued by a "reputable college of medicine in good standing." It requires that "All applicants shall be examined in the applied branches of the theory and practice of medicine and surgery or either of them, as those branches are taught in the reputable chartered schools of the system of medicine to which the applicant belongs and which the applicant intends to practice, and such examination shall in all cases include anatomy, physiology, pathology, diagnosis, hygiene, chemistry, histology and toxicology," and that "the board shall cause the examination to be scientific and practical and sufficiently thorough to test the applicant's fitness to practice medicine and surgery or either of them, and if the applicant correctly answer at least seventy-five per cent of all the questions submitted, said board shall grant the applicant a license to practice medicine and surgery in this state. Every applicant for license under any of the provisions of this act must furnish sufficient evidence to the board that they are of good moral character." The only mention made in the act of the right of the defeated applicant to resort to the courts is found in section 9, and is as follows: "In case the board refuse to grant a license to practice under this act, the applicant shall have the right to have the action of the board refusing such license reviewed by the district court in and for the county in which the meeting at which the license was refused was held, or such other county as may be agreed upon; provided, proceedings for such review be instituted within ten days after notice of such refusal upon the applicant." This language indicates an intention on the part of the legislature to limit and confine the authority and jurisdiction of the courts in considering the action of the board in refusing to grant a license to the procedure and scope of investigation and inquiry usually pursued and exercised by the courts in the issuance and consideration of writs of review. The context of the act, its purpose and object, reinforce this conclusion. It is clear that it

does not confer the right of appeal from their action. The legislature had in view the protection of the health of the people of the state, and as a means to effect that end, determined that all persons thereafter intending to enter the practice of medicine and surgery should be examined as to their fitness, learning and qualifications by a board of experts learned in the science and art of that particular profession. Is it at all probable that the legislature ever intended that a disappointed applicant might apply to the court and there have his answers re-examined and passed upon by one unlearned perhaps in a single one of the branches of this science? Courts are neither required nor expected to be experts in therapeutics, genecology, toxicology, diagnosis, etc., and for them to undertake to examine and grade physicians on such branches would be an unwarranted assumption of jurisdiction. The layman wandering among the puzzling mazes of materia medica and the speculative bewilderments of pathology, might with equal assurance and conscientiousness grade an applicant who had correctly answered all the questions at ten per cent and one who had correctly answered none at one hundred per cent. But appellant contends that since he introduced in evidence what he claims are correct text-book answers to the questions, the court can have a standard by which to examine and grade answers. This would hold good so long as the answers of the applicant might be in the same language as the answers which are shown to be correct, but the moment the applicant's answer branches out into different language and his own mode of expression, a court, not proficient in the science of a profession characterized by abundant technical language and phraseology, would encounter perplexities and difficulties unnumbered. Confusion and difficulty often arises even among those learned in a given science in determining the exact point at which a change in language and mode of expression, originally correct, passes beyond the realm of accuracy and enters the domain of the false and incorrect. If this be true as to those qualified on the subject, how much greater the embarrassment must be to those unlearned on the subject.

In *People v. Hasbrouck*, 11 Utah, 291, 39 Pac. 918, the supreme court of Utah in the course of its discussion of the powers and duties of a board of medical examiners and the right of the court to review its action, said: "It would be absurd to contend that the courts must be converted into boards of medical examiners to ascertain and decide whether an individual possesses such technical knowledge or such moral character that he may be permitted to practice medicine with safety to the public, or whether the institution from which he holds a diploma is a 'respectable medical college,' or, on the other hand, a fraud or an institution whose instruction is unfit to properly and decently prepare its graduates for practice. The determination of these and kindred questions relating to the fitness of an individual to carry on an occupation requiring for its safe and proper conduct a person of decent moral character, or to engage .in an occupation requiring special knowledge, care, and prudence, such as that of a pilot or many others which may be mentioned, including, of course, the practice of the professions of law and medicine, may constitutionally be and is very properly devolved everywhere upon boards of inspection composed of experts in the particular occupation in question." It is proper to observe here that the ·medical law of Utah, under which *People v. Hasbrouck* was decided, contains no provision authorizing resort to the courts for relief either by way of appeal or writ of review, and in that particular differs from section 9 of our law. There the only remedy was by review. Under our law as we view it, the legislature intended to set at rest the question of the remedy by specifically limiting it to the writ of review.

In answer to the contention made by the board that the inquiry is limited to the authority of the board to act in the particular manner it has acted, appellant urges that the medical board exercises purely ministerial functions and is not vested with any discretionary or judicial power, and that the writ of review will only lie to review the excessive jurisdiction assumed by a board or tribunal which exercises judicial functions. A careful examination of the powers and authority granted the board will at once disclose the fact that it is called

upon to exercise judgment and discretion in every instance
where an application is made for a license on examination.
It is the duty of the board first to determine whether or not
the applicant is the *bona fide* holder of a diploma issued from
a reputable medical college in good standing.   It is their duty
to determine whether or not the applicant is a person of
good moral character.   It is also their duty to examine his
answers to the questions propounded and determine whether
or not he has "correctly answered at least seventy-five per
cent of all the questions submitted" to him.   These are ques-
tions of fact to be determined by the board.   There are no
set, fixed or inviolable rules by which such a board must deter-
mine whether a question has been answered correctly or in-
correctly.   Knowledge must be brought to bear and judgment
must be exercised.   The science of medicine is not such an
exact and immutable science but that those who are eminent
and learned in the profession often differ in a diagnosis or as
to what would be an absolutely correct answer to a given ques-
tion.   It is a progressive science.   This is one of the chief con-
siderations for requiring such examinations to be conducted
by those who are proficient and learned in the profession.   The
powers and authority to be exercised by various boards of this
character have been frequently considered by the courts, and
it has been generally held that they exercise discretionary and
quasi judicial functions.

In *People v. Dental Examiners*, 110 Ill. 180, the court said:
"Whether a college be reputable or not, is not a legal ques-
tion, but a question of fact.   So, also, are the requirements
in regard to the annual delivery of full courses of lectures and
instruction.   These questions of fact are, by the act, submitted
to the decision of the board—not in so many words, but by the
plainest and most necessary implication.   Their action is to
be predicated upon the existence of the requisite facts, and no
other tribunal is authorized to investigate them, and of neces-
sity, therefore, they must do so.   The act of ascertaining and
determining what are the facts is in its nature judicial.   It
involves investigation, judgment and discretion."

In *Williams v. Dental Examiners,* 93 Tenn. 620, 27 S. W.
1019, Mr. Justice Wilkes, in discussing the character of the
duties devolving upon a board of dental examiners, said:
"In performing their duties the board is exercising a quasi
judicial function, and, so long as it does not act arbitrarily
and illegally, its determination cannot be coerced by the
courts through writs of *mandamus* so far as they involve the
exercise of their discretion." To the same effect see *State
v. Gregory,* 83 Mo. 123, 53 Am. Rep. 565; *State v. Hathaway,*
115 Mo. 36, 21 S. W. 1081; *Iowa Eclectic Medical College
Assn. v. Schrader,* 87 Iowa, 659, 55 N. W. 24, 20 L. R. A.
355; *Keller v. Hewitt,* 109 Cal. 146, 41 Pac. 871; *Van Vleck
v. Board of Dental Examiners* (Cal.), 48 Pac. 223; *State v.
Board of Health of Hudson County,* 53 N. J. L. 594, 22 Atl.
226. If the board should fail to act when it is their duty
to act, the courts are open to enforce action. If they act with-
out jurisdiction, the courts are open to inquire into and review
the authority they have assumed to exercise. The court can-
not, however, under our medical law, be converted into a
board for the examination of applicants for a license to prac-
tice medicine and surgery. In this case the plaintiff, irre-
spective of the result of his examination, asked the court to
enter a decree that he "has the legal right to and may prac-
tice medicine and surgery in the state of Idaho." To enter
such a decree would be in violation of the law, for the reason
that section 11 of the medical law makes it a misdemeanor to
practice medicine and surgery within this state without hav-
ing obtained a license in the manner provided in the act. The
license would in any event have to issue from the board.
Questions of bias or prejudice existing in the mind of any
member of the board against an applicant or of incompetency
of a member or of errors and mistakes of judgment or unfair-
ness in marking and grading an applicant's papers are matters
that may be properly addressed to the executive authority
from which they receive their appointment, who may take such
action thereon as the best interests of the public demand.
The judgment of the lower court in denying plaintiff relief
will be affirmed, and this affirmance is placed on the grounds

that the courts have no jurisdiction under the medical law to examine applicants or review their answers and mark and grade them on such answers, such action being the duty of the medical board. Costs awarded to respondent.

Stockslager, C. J., concurs.

Sullivan, J., expresses no opinion.