(March 29, 1912.)

## CLARK A. BARTON, Plaintiff, v. J. F. SCHMERSHALL et al., Constituting the STATE BOARD OF MEDICAL EXAMINERS OF THE STATE OF IDAHO, Defendants.

[122 Pac. 385.]

PHYSICIANS — LICENSE TO PRACTICE WITHIN THE STATE — POWER OF BOARD OF EXAMINERS.

(Syllabus by the court.)

1. Under the provisions of an act approved March 3, 1899, Laws of 1899, p. 192, entitled "An act to regulate the practice of medicine and surgery within the state of Idaho, . . . . " discretionary power is conferred upon the board of examiners to determine the questions of fact presented by an application for license, and the board may either grant or refuse a license according to the judgment of the board.

2. The legislature of this state has the power to regulate the practice of medicine and surgery within the state, and in doing so the legislature may require applicants to practice medicine and surgery to pass an examination under the supervision of an examining board, and such board may be given power to determine the qualifications of the applicant to receive a license, and the

action of such board may be reviewed only in the manner and for the purpose provided by the statute.

3. In determining the qualification of an applicant for license to practice medicine, without examination, as provided by sec. 1342, Rev. Codes, as amended by Laws of 1909, p. 192, the state board of examiners is required to determine the following questions of fact: First, that the applicant has been licensed to practice medicine by a similar board of another state; that is, whether the applicant has been licensed and whether it was by a board similar to the examining board of this state; second, that the applicant holds a certificate of registration showing that an examination has been made by a proper board of any state in which an average grade of not less than eighty per cent was awarded to the holder thereof; third, that the applicant was the legal possessor of a diploma from a medical college in good standing in any such state, which said diploma may be accepted in lieu of an examination as evidence of qualification; fourth, that the scope of the examination was not less than prescribed in this state.

4. In determining the questions of fact presented to the state board upon application for a license to practice medicine and surgery within the state without examination, the board is not in any way limited to any particular character or kind of proof, but is possessed with power to determine such questions by such evidence as will satisfy the minds of the members of the board, as to whether the applicant for license is qualified as required by law and the rules of the board.

5. The statute regulating the practice of medicine and surgery within the state of Idaho is intended for the common good of the people of the state and is clearly within the police power of the state. The determination of the questions of fact required to be established by the applicant for license may be reviewed in the manner prescribed by the statute, and if the applicant has been deprived of any legal right it may be corrected by the courts of the state, but the court will not interfere with or disturb the discretionary power conferred upon the state board.

An original action for writ of mandate. Writ denied.

Richards & Haga, for Petitioner.

"Statutes will be construed with a view to ascertain the intent of the law-making power and to give force and meaning to the language used." (*Idaho Mut. etc. Ins. Co. v. Myer*, 10 Ida. 294, 77 Pac. 628; *State v. Knowles*, 90 Md. 646, 45 Atl. 877, 49 L. R. A. 697.)

"If the board should fail to act when it is their duty to act, the courts are open to enforce action." (*Raaf v. State Board,* 11 Ida. 718, 84 Pac. 33; *Speer v. Stephenson,* 16 Ida. 720, 102 Pac. 365; *Vadney v. State Board,* 19 Ida. 209, 112 Pac. 1046.).

D. C. McDougall, Attorney General, Sullivan & Sullivan, J. H. Peterson, and O. M. Van Duyn, for Defendants.

"The word 'may,' according to its ordinary construction, is permissive, and should receive that interpretation unless such construction would be obviously repugnant to the intention of the legislature, or would lead to some other inconvenience or absurdity." (5 Words and Phrases, p. 4421.)

STEWART, C. J.—This is an original application for a writ of mandate. The petition alleges that the defendants constitute the state board of medical examiners of the state of Idaho, and that on the 4th day of October, 1911, the plaintiff made application to the defendant board for a license to practice medicine within the state of Idaho; that such application was made under the provisions of sec. 1342 of the Rev. Codes, as amended by Sess. Laws, 1909, p. 192, and that with plaintiff's application for admission he also transmitted his diploma from the Bennett Medicine College at Chicago, Illinois, a medical college in good standing in the state of Illinois, that said diploma shows that at the time of such examination the applicant was the holder of said diploma; that the applicant also furnished with said diploma a certificate showing that an examination of the applicant had been made by the proper board, to wit, the Eclectic Medical Board of Examiners of the state of Arkansas, on the 9th and 12th days inclusive of May, 1911, in which examination an average grade of 85.5 per cent was awarded to the applicant; that accompanying such application was the license of the applicant to practice medicine, duly issued to the applicant under such examination by the Eclectic board of the state of Arkansas; that the applicant in transmitting said diploma accompanied the same by his affidavit setting forth

that such diploma was genuine, and that the applicant was
the possessor of said diploma, and the person named therein,
and that the same was procured by the applicant after pur-
suing the regular course of study and examination in said
institution, and that he was a citizen of the United States;
that he supported his said allegation with proof of his good
moral character, and accompanied the application with $25
in lawful money of the United States; that such application
was rejected by the defendants acting as the state board of
medical examiners of the state of Idaho; that the extent and
scope of the examination taken by the applicant before the
Eclectic State Medical Board of Examiners of the state of
Arkansas on the 9th and 12th days of May, 1911, was of the
same scope and covered the same subjects included in the
examination required of physicians applying for a license to
practice medicine within the state of Idaho, under the pro-
visions of sec. 1342, Rev. Codes of Idaho, as amended by the
10th session of the legislature of the state of Idaho, Sess.
Laws 1909, p. 192; that he is entitled to a license under said
application and that he has no plain, speedy and adequate
remedy in the ordinary course of law.

To this complaint a motion to quash was made by the
defendants upon the ground that the application does not
state facts sufficient to constitute a cause of action, nor entitle
the petitioner to the relief asked for, nor any relief whatever.

The question arising upon the petition and motion involves
the construction of sec. 1342 of the Rev. Codes, as amended
by the legislature, Laws of 1909, p. 192. This section is as
follows:

"Said board shall have the authority to prescribe and
establish all needful rules, regulations and by-laws not incon-
sistent with the laws of this state or the United States to carry
into effect the provisions of this chapter, and said board
may, either with or without examination grant a license to
any physician licensed to practice by a similar board of any
other state and who holds a certificate of registration showing
that an examination has been made by the proper board of
any state in which an average grade of not less than eighty

per cent was awarded to the holder thereof, the said applicant and holder of such certificate having been at the time of said examination the legal possessor of a diploma from a medical college in good standing in any such state which said diploma may be accepted in lieu of an examination as evidence of qualification. In case the scope of said examination was less than that prescribed by this state, the applicant may be required to submit to an examination in such subjects as have not been covered."

The foregoing section of the Rev. Codes, before the amendment was made in 1909, was a part of an act approved March 3, 1899, entitled "An act to regulate the practice of medicine and surgery within the state of Idaho and providing penalties for the violations of this act, and the repeal of all other acts in relation thereto." By the provisions of sec. 6 of this act (Rev. Codes, sec. 1346) it is provided: "After the passage of this act, every person, except as hereinafter provided, desiring to commence the practice of medicine and surgery, or either of them, within the state shall, immediately and prior to commencing the same, make a written application to the state medical examination board, upon suitably prepared blanks, to be furnished by the board, for a license so to do. The applicant shall transmit with said application his or her diploma together with an affidavit setting forth that said diploma is genuine and that the applicant is the rightful possessor thereof and the identical person named therein, and that the same was obtained by pursuing the regular course of study or examination in said institution, and setting forth that he or she is a citizen of the United States, or has declared their intention of becoming such. If the said diploma has been issued by a reputable college of medicine in good standing, said applicant shall be eligible to examination." Then follow the requirements as to the examination, and then it provides: "No applicant for license shall be allowed to practice medicine and surgery or either of them until such license shall have been granted."

Sec. 10 of the act (Rev. Codes, sec. 1350) provides that the practicing of medicine and surgery within the state with-

out having obtained a license is a misdemeanor, and the penalty to be inflicted upon conviction.

When, therefore, the amendment to sec. 2 of the act of 1899 was made as hereinabove set forth, the law required that all persons intending to practice medicine should procure a license from the state board with certain exceptions provided in the act, and granted power to the state board of examiners to hold examinations and determine the sufficiency of the application and the qualification of the applicant.

It is the contention of counsel for plaintiff that the foregoing section of the statute grants to the defendant board power to issue a license upon the petitioner complying with the terms of this section, and where application is made to the state board for such license, and the applicant complies with the statute, it is the duty of the board to issue the license, and that such statute is mandatory. Counsel also argue that a person who makes application for a license and presents to the board an affidavit showing: 1. That he has been granted a license to practice by a similar board of another state. 2. That he holds a certificate of registration showing that an examination·has been made by the proper board of another state in which an average grade of not less than eighty per cent was awarded to the applicant. 3. That the applicant at the time of said examination was the legal possessor of a diploma from a medical college in good standing in any such state, which said diploma may be accepted in lieu of an examination as evidence of qualification. 4. That the scope of the examination in such other state was not less than that prescribed by this state—is entitled to a license as a matter of right, and that the board has no discretion in refusing such license. While counsel for defendants contend that under the powers granted by such statute the board is given the right to choose between two methods: First, that they are authorized to issue a license after the applicant has taken an examination such as is prescribed by the board; and second, to grant such license without an examination upon the applicant presenting to the board a license issued by a similar board of any other state, and who holds a certificate

of registration showing that an examination has been made by the proper board of such state, in which an average grade of not less than eighty per cent was awarded to the holder thereof, said applicant and holder of said certificate having been at the time of said examination a legal possessor of a diploma from a medical college in good standing in any such state, which said diploma may be accepted in lieu of an examination as evidence of qualification. In case the scope of said examination was less than that prescribed by this state, the applicant may be required to submit to an examination in such subjects as have not been covered.

The power thus conferred upon the board of medical examiners has been considered by this court in a number of instances, in each of which this court has held that the statute conferred discretionary power and judgment upon the board in determining the questions of fact presented by the application, and also the qualification of the applicant from his examination, and they might either grant or refuse a license according to the judgment of the board. In the case of *Raaf v. State Board etc.*, 11 Ida. 717, 84 Pac. 33, in discussing this question this court said: "If the board should fail to act when it is their duty to act, the courts are open to enforce action. If they act without jurisdiction, the courts are open to inquire into and review the authority they assumed to exercise. The court cannot, however, under our medical law, be converted into a board for the examination of applicants for a license to practice medicine or surgery." In other words, where the statute requires an examination of an applicant the statute also confers power upon the board to determine the qualifications of the applicant and whether the examination shows the applicant to be qualified under the statute.

In the case of *In re L. F. Inman*, 8 Ida. 398, 69 Pac. 120, this court, in discussing the act of 1899, says: "It is argued on behalf of the petitioner, too, that no one, under the provisions of the act in question, can take the examination and acquire license who is not a graduate of a reputable college of medicine in good standing; and that the board is made

the judge of what is a reputable school of medicine, and therefore vested with judicial power, in contravention of the provisions of our constitution. We think that the provisions complained of are reasonable and a proper exercise of the police power of the state. Similar legislative acts have so often been held to be a proper exercise of the police power of the state as to make citation of authority upon that question almost unnecessary. It has often been held that it is competent for the legislature to provide for a board who shall pass upon the competency of applicants to practice medicine and surgery. The vesting of such power in the board does not grant to it such judicial power as renders the act objectionable under the provisions of section 2 of article 5 of our constitution.''

Upon these authorities, there is no question as to the power of the legislature to regulate the practice of medicine and surgery within the state of Idaho, and in so doing the legislature required applicants to practice medicine and surgery to pass an examination under the supervision of an examining board, and such board may be given power to determine the qualifications of the applicant to receive a license, and the action of such board may be reviewed only in the manner and for the purpose provided by the statute. Under this rule of construction there could seem to be no doubt as to the authority of the legislature of the state to legislate in the manner provided in the amendment to sec. 1342.

Under the provisions of sec. 1342 of the Rev. Codes, the legislature grants power to the board of examiners to determine the qualification of applicants to practice medicine, first, by examination; second, without examination upon the applicant presenting to the board satisfactory proof of the existence of certain facts with reference to the qualification of the applicant. When application is made for license without examination, certain questions of fact are to be determined as follows: First, that the applicant has been licensed to practice medicine by a similar board of another state; that is, whether the applicant has been licensed, and whether it was by a board similar to the examining board of this state;

second, that the applicant holds a certificate of registration showing that an examination has been made by the proper board of any state in which an average grade of not less than eighty per cent was awarded to the holder thereof; third, that the applicant was the legal possessor of a diploma from a medical college in good standing in any such state, which said diploma may be accepted in lieu of an examination as evidence of qualification; fourth, that the scope of such examination was not less than prescribed in this state.

In determining these questions of fact, the board is not required to accept the statement of the applicant or his affidavit as conclusive proof that the board of any other state was in fact a similar board to the board of examiners of this state, or that the applicant holds a certificate of registration showing that an examination has been made by the proper board of any other state in which an average grade of not less than eighty per cent was awarded to the holder thereof, or that the examination given him in another state was similar in scope to that conducted by the board in this state, or that the applicant was the legal possessor of a diploma from a medical college in good standing in any such state; or that the board issuing to him a certificate in another state accepted the diploma from the Bennett Medicine College of Chicago, Illinois, as a medical college in good standing in that state and in lieu of an examination.

The statute does not in any way limit the medical board in determining the qualification of an applicant to any particular character or kind of proof, and the board are possessed with power to determine these questions upon such evidence as will satisfy their minds as to whether or not the applicant for license is qualified as required by the law and the rules of the board. When the defendants in this case acted upon the application of the plaintiff, the plaintiff did not show by his application, except by his own mere statement, that the Bennett Medicine College of Chicago was a medical college in good standing in either the state of Illinois or the state of Arkansas; neither did he show, except by his own statement, what the law of the state of Arkansas is with

reference to the powers and duties of the state board of medical examiners of that state, and the nature and character of the examination by them made of an applicant for license to practice medicine in that state, in order that the state board of this state might be able to determine whether the examining board of that state was similar to the examining board of this state. It is barely possible that the state board of examiners, under their duties as such, may have ascertained from reliable and satisfactory information the standing of the Bennett Medicine College of Chicago, and also as to the scope and extent of the statutory regulations in the state of Arkansas, and upon such facts were advised and had knowledge that the laws of this state were not complied with and the standard required by the statute was not shown by the applicant to be of that standard which would qualify him to practice medicine and surgery within the state of Idaho, and by reason of this fact determined the applicant's qualification adversely to him.

In enacting a law regulating the practice of medicine and surgery within the state, the legislature had in mind the protection of the people of the state against those not qualified for such service. The board, under the provisions of the law, are required to be graduates of reputable medical colleges in good standing, and learned and skilled in the theory and practice of medicine and surgery and of good moral repute. The legislature could not have selected a tribunal or board who could be more skilled or better qualified than a board composed of persons qualified in the manner prescribed by the statute. This board is further required to be appointed from different schools of medicine and not less than three schools of medicine should be represented in said board. Possessing these qualifications, it would seem that the legislature intended to confer upon this board the power and authority to determine the qualifications of persons applying for license to practice medicine and surgery in this state, and we know of no tribunal which would be better qualified to determine the question as to the qualifications of an ap-

plicant than those specially educated and skilled along the lines required by the statute.

To sustain the position of the plaintiff in this case would mean that upon an applicant for license making oath that the examination given him in another state was by a similar board and was similar in scope to that required by the law and the rules of the board of this state, and that the medical college from which he had received his diploma was a medical college in good standing in the state from which he had received his certificate of registration, the board would have no discretion in the matter, and would virtually hold that the opinion of the applicant upon such questions was superior to that of the board of examiners of this state, and that the provisions of the statute made it mandatory on the board to act upon such application and issue such license, notwithstanding the fact that the board were satisfied from evidence and knowledge they possessed that the applicant had not been examined by a board similar in power or authority and under the same requirements as those prescribed by the laws of this state; and that the medical college from which the applicant holds a diploma was a medical college not in good standing in the state from which the applicant had received his certificate.

Sec. 1346 of the Rev. Codes provides: "All applicants shall be examined in the applied branches of the theory and practice of medicine and surgery or either of them, as those branches are taught in the reputable chartered schools of the system of medicine to which the applicant belongs and which the applicant intends to practice, and such examination shall in all cases include anatomy, physiology, pathology, diagnosis, hygiene, chemistry, histology and toxicology. . . . . " If the examining board has no discretion in issuing such licenses, then the board would be required to act and issue a license to an applicant who had not in fact passed the examination required by the above section of the statute, and the same would also be true with reference to the diploma and the standing of the medical college issuing the same. In the case of *In re L. F. Inman, supra,* this court held that it

was within the discretion of the board of examiners to determine the standing of the medical college from which an applicant had received a diploma.

Counsel for plaintiff, however, very strenuously argue in this case that the legislature intended that the word "may" after the words "said board," in line 5, should read "must," and that the defendant board must grant a license with examination only in the branches not covered by the examination held in another state, and that the board must grant a license without examination if the scope of such examination in another state was not less than prescribed by this state. We are unable to agree with this contention, and we see no reason why such conclusion of the intent of the legislature should be reached either from the purpose of the act or its language, and to do so would be to practically annul the power of the legislature to regulate the practice of medicine within the state. Many authorities are cited by counsel for plaintiff with .reference to whether the word "may" in a statute is to be construed as mandatory, and such authorities are recognized as stating the law upon this question, but, as we understand, the construction to be applied to this statute is that "statutes will be construed with a view to ascertain the intent of the law-making power and to give force and meaning to the language used." (*Idaho Mutual Co-op. etc. Co. v. Myer*, 10 Ida. 294, 77 Pac. 628; *State v. Knowles*, 90 Md. 646, 45 Atl. 877, 49 L. R. A. 697.)

In the case of *Kemble v. McPhaill*, 128 Cal. 444, 60 Pac. 1092, the supreme court of California, after noting the general rule laid down in the Am. & Eng. Ency. of Law, vol. 14, p. 78, said: "Tested by the foregoing rule, we see nothing whatever in this act to demand any unusual interpretation of the word. We do not.see that it is at all necessary, in order to give effect to the clear policy and intention of the legislature in enacting this statute, that it should be construed in a mandatory sense. We cannot see that the legislative intent was to impose a duty upon the board of education of granting certificates under the aforesaid circumstances, but it is rather made quite plain that it was the intention of the

legislature to extend to the board a privilege or discretionary power as to the issuance of this class of certificates. Neither do we see that the public is interested, or has any claim in the matter, or that third persons have a claim *de jure* to demand an exercise of the power.'' The rule thus announced is clearly applicable to the case now under consideration. No unusual interpretation should be permitted or is required in this case to give force to the clear policy and intent of the legislature in enacting this statute. The statute was intended to require a certain standard of proficiency and skill in order to qualify an applicant to practice medicine and surgery within the state, and to grant to the board of examiners the power to determine the proficiency and skill of the applicant. This statute is intended for the common good of the people of the state, and is clearly within the police power of the state. The determination of the questions of fact required to be established by an applicant for license to practice medicine and surgery within this state may be reviewed in the manner prescribed by the statute, and if the applicant has been deprived of any legal right, it may be corrected by the courts of the state, but the court will not interfere or disturb the discretionary power conferred upon the board.

The motion to quash the writ is sustained. Costs awarded to the defendants.

SULLIVAN, J., Concurring in the Conclusion.—Under the motion to quash, which is in effect the general demurrer and so conceded by all parties, the board admits the truthfulness of each of the allegations contained in the application. No question is raised as to whether the board has power to hear evidence in regard to any of the facts required to be shown in an application like the one at bar. Under the provisions of Sess. Laws 1909, p. 192, the medical board, if it desired to do so, had the right to deny any of the allegations contained in the petition; had the right to deny that the plaintiff was the legal possessor of a diploma from a medical college of good standing in the state of Illinois, or that the plaintiff had passed the required medical examination before

the medical board of the state of Arkansas, and had received an average grade of more than eighty per cent by said board. But those questions are not involved here, the board having admitted all of the facts stated in the. petition or complaint. The only question presented is whether said provision of the statute, to wit, that said board may "either with or without an examination grant a license," etc., is mandatory under the facts of this case, or whether the board has the legal discretion to require the applicant to pass an examination in this state.

It is clear to me that said statute is not mandatory and that it is left to the legal discretion of the medical board to determine whether the applicant shall be licensed to practice medicine without an examination or may be required to pass an examination before issuing to him such license.

AILSHIE, J., Concurring.—The only question presented here is: Can the medical board require an applicant to pass an examination where he holds a license from a medical board of another state, where the board of such other state required an examination on all the subjects required by the board of this state and the applicant was awarded an average grade of not less than eighty per cent, and has in all other respects complied with the requirements of the statute? The question should be answered in the affirmative and the writ denied. The statute confers a discretion on the board.