308 P.2d 225

**ELECTORS OF BIG BUTTE AREA,**
Plaintiffs-Respondents,

v.

**STATE BOARD OF EDUCATION,**
Defendant-Appellant.

In the Matter of the Petition of Two-Thirds or More of the Qualified Electors of the Big Butte Area of Idaho County, State of Idaho.

No. 8491.

Supreme Court of Idaho.

March 11, 1957.

Graydon W. Smith, Atty. Gen., Edward J. Aschenbrener, Elbert E. Gass, Asst. Attys. Gen., for appellant State Board of Education.

604

Swayne & McNichols, Orofino, for respondents.

TAYLOR, Justice.

The petitioners (respondents) are residents and qualified electors of an area lying in the north or northwest part of Independent Class A School District No. 241, Idaho and Adams Counties. They filed their petition on the 13th day of May, 1953, with the state board of education (appellant), requesting that the area particularly described be separated from district No. 241 and added to Joint Class B School District No. 302, Lewis and Clearwater Counties. In their petition they set forth as reasons for the change that (1) Nezperce, where the school

plant and facilities of district 302 are located, is within the natural trade area for their territory, and that they have their church, lodge and other affiliations therein; (2) the area can be serviced by district No. 302; (3) and the area cannot be serviced by district No. 241. This petition was filed pursuant to the provisions of § 33–514, I.C., as amended by chapter 115, session laws of 1953. The amendment is as follows:

"Provided further, that when at least two-thirds of the qualified electors residing in any area of any school district, wish to separate out of such district and become a part of an adjoining school district, they may file a petition with the state board of education, showing their names, places of residence and post office addresses, and describing the exact area, by metes and bounds, with legal subdivisions according to the federal land survey, which they propose to be joined to such other district and setting forth the grounds and reasons therefor. Upon the filing of such petition, the state board of education is authorized and required to hold a public hearing upon such petition, before one or more members of such board, at a time and convenient place to be fixed by such board within the area proposed to be separated out from said district, and give notice thereof to each of the petitioners and to the boards of trustees of all affected school districts by United States mail to appear and testify at such hearing. Upon the conclusion of such hearing, the board of education is authorized and required to make its findings and order, determining whether or not said petition shall be granted *which determination shall be based upon what is for the best interest of the students and schools concerned, that the proposed change shall not place unnecessary financial hardship upon the affected districts* and with such modifications as the board shall prescribe and, in the event it determines that the request of such petitioners shall be granted, with or without modifications, the board shall make its order to that effect, changing the boundaries of such school districts concerned in conformance with such order, so as to separate out of the said area, or such part as it determines, from the district of which it is a part and join it to the district proposed by the petitioners; and such order shall be conclusive, except for the right of any interested person to *appeal therefrom to a court of competent jurisdiction.*" § 33–514, I.C. (Emphasis added.)

The area proposed to be transferred is known and referred to as the "Big Butte Area". Before reorganization it was in part a separate school district. It has its

own school building, which is still in use as one of the units of district No. 241.

For more than a year following the filing of the petition the board neglected and refused to hold a public hearing as required by the statute, and did not fix a time for such a hearing until an order to show cause for its refusal was issued by the district court.

A hearing was had before two members of the board in the Big Butte school house, August 26, 1954. November 3, 1954, the board made its findings and entered its order, "that the petition herein be denied in toto without modification." From this order the petitioners appealed to the district court, where the cause was tried de novo April 18, 1956. June 11, 1956, judgment was entered reversing the order of the board, and the board brought this appeal. Initially the board refused to certify the record, made before it, to the district court. Responding to an order to show cause, the board challenged the jurisdiction of the district court to try the cause de novo; urged that the court could consider the appeal only as a proceeding for review under the provisions of title 7, chapter 2, I.C.; and that its inquiry would be limited to the two questions, (a) whether the board acted in excess of its jurisdiction, and (b) whether the board had regularly pursued its authority. After hearing the issues thus raised, the court made its order November 8, 1955, directing the board to certify the record, as requested by the notice of appeal.

Upon the trial, the record certified by the board, and other evidence, both oral and documentary, was received.

■ The question raised is as to the nature and the scope of the appeal. What is meant by "appeal therefrom to a court of competent jurisdiction"? There can be no question that the district court is such a court. Constitution, Art. 5, § 20. The review provided for by chapter 2, of title 7, is described as follows:

"A writ of review may be granted by any court except a probate or justice's court, when an inferior tribunal, board or officer exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, and there is no appeal, nor, in the judgment of the court, any plain, speedy and adequate remedy." § 7–202, I.C.

"The review upon this writ can not be extended further than to determine whether the inferior tribunal, board or officer has regularly pursued the authority of such tribunal, board or officer." § 7–208, I.C.

■ The legislature provided for an "appeal". We cannot hold that it intended to say, "writ of review". In the absence of limitations an appeal is of broader scope

than certiorari. Appeal being provided for, and an appeal being also an adequate remedy, a writ of review could not be had. However, this does not necessarily dispose of the question as to the scope of the appeal. Appellant contends the district court may not receive additional evidence, but is confined to the record made before the board, and that the court may not make independent findings of fact, but is bound by the findings made by the board.

"The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted." Art. 2, § 1, Constitution of Idaho.

■■ It is conceded that the creation, destruction, expansion or contraction of school districts is a legislative function. Constitution, Art. 9, § 1; Art. 3, § 1. The legislature has plenary powers in such matters. In re Common School Dists. Nos. 18 and 21, 52 Idaho 363, 15 P.2d 732. A statute authorizing the district court on finding certain facts to detach lands from a municipality does not vest legislative power in the court. Lyon v. City of Payette, 38 Idaho 705, 224 P. 793. Cf. Annotations, 64 A.L.R. 1352; 69 A.L.R. 266; 117 A.L.R. 276.

The judicial power of the state is vested in the courts. Art. 5, § 2.

"The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government; but the legislature shall provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court, so far as the same may be done without conflict with this Constitution." Constitution, Art. 5, § 13.

It is not always possible to draw a sharp line of distinction between legislative, judicial and executive powers or functions, nor does it appear necessary to the purpose of the constitutional separation of powers, to do so.

In Tulare Water Co. v. State Water Commission, 187 Cal. 533, 202 P. 874, the supreme court of California, in considering a statute West's Ann.Water Code, § 1250 et seq. which authorized an investigation and the exercise of discretion by the commission as to the sufficiency of an application to appropriate water and the existence of water subject to appropriation, said:

"Even if a hearing could be required, the Commission is without jurisdiction to finally determine the existence or nonexistence of water subject to appropriation, and in such a case its denial of an application, if held to be a judicial determination of the right, would leave the petitioner without remedy, as no appeal is provided for, and certiorari would only go to the regularity of the proceeding, and not to the merits of the ruling.

"* * * To conclude the rights of would-be appropriators, by the extrajudicial, and perhaps arbitrary, action of a board of water commissioners, would be to deprive such applicant of a valuable property right without due process of law." 202 P. at page 876.

And in Tarpy v. McClure, 190 Cal. 593, 213 P. 983, involving the creation of a water storage district:

"Unquestionably, the creation of such a district is a legislative act, the performance of which may not be delegated by the Legislature to an executive or judicial officer. [Cases.] On the other hand, it is equally well settled that the Legislature may enact conditions, upon the performance of which the district shall be regarded as organized with the powers mentioned and described in the act; and it may intrust the doing of an act or the determination of a fact, upon which those conditions depend, to some other agency. [Cases.] If, as claimed by respondents, this act attempts to vest in them arbitrary power and authority, or an uncontrolled and unguided discretion, in matters essential to the creation of the proposed district, it is, to that extent, void. [Cases.] On the other hand, the Legislature may, without violating any rule or principle of the Constitution, confer upon an administrative officer a large measure of discretion, provided the exercise thereof is controlled and guided by rules prescribed therefor." 213 P. at page 987.

In Temescal Water Co. v. Department of Public Works, 44 Cal.2d 90, 280 P.2d 1, 7, the supreme court of California considered an amendment to the act considered in the Tulare case, which authorized the commission to allow the appropriation of unappropriated water, " 'unless, in the opinion of said commission, such appropriation would be detrimental to the public welfare' ", and " 'under such terms and conditions as in the judgment of the commission will best develop, conserve and utilize in the public interest the water sought to be appropriated.' " A general statute provided for a judicial review of such administrative decisions by way of mandamus. The court held that the parties concerned must first exhaust the administrative rem-

edies provided by the law, before the courts will act, and that after such remedies have been exhausted, the aggrieved party was entitled to a trial de novo or its equivalent. The holding is based upon the proposition that the constitution forbids the legislature to confer judicial power upon the commission and that to make the commission's findings and determination final and binding upon the courts would violate the constitution.

In Drummey v. State Board of Funeral Directors, etc., 13 Cal.2d 75, 87 P.2d 848, the court reviewed action of the board in cancelling respondents' license. It was held that such an administrative board cannot, and does not, under the constitution, exercise either judicial or quasi-judicial powers; that its action in such cases is therefore ministerial and subject to review by the courts; that upon such review the court will weigh the evidence and draw its own conclusions in matters committed to the discretion of the board. The court recognized the existence of a presumption sustaining the board's action, and held the burden to be on the party complaining to show that it is not supported by the record. Noting that finality characterizes judicial action, the court said:

"If it should be held that the board's action in cancelling or suspending an existing license is binding on the courts, if such action is predicated on conflicting evidence, we would be nec-

essarily holding that such board is exercising at least quasi-judicial powers. It is the essence of judicial action that finality is given to findings based on conflicting evidence. If the statute be so construed it would violate the state Constitution." 87 P.2d at page 853. And the court quotes from St. Joseph Stock Yards Co. v. U. S., 298 U.S. 38, 56 S.Ct. 720, 80 L.Ed. 1033, as follows:

" 'Legislative agencies, with varying qualifications, work in a field peculiarly exposed to political demands. Some may be expert and impartial, others subservient. It is not difficult for them to observe the requirements of law in giving a hearing and receiving evidence. But to say that their findings of fact may be made conclusive where constitutional rights of liberty and property are involved, although the evidence clearly establishes that the findings are wrong and constitutional rights have been invaded, is to place those rights at the mercy of administrative officials and seriously to impair the security inherent in our judicial safeguards. That prospect, with our multiplication of administrative agencies, is not one to be lightly regarded.' " 87 P.2d at pages 853–854.

In the later case of Laisne v. State Board of Optometry, 19 Cal.2d 831, 123 P. 2d 457, the whole subject matter was extensively reviewed by a divided court in

both the majority and dissenting opinions. The majority held, under a constitutional provision like our Art. 5, § 2, that administrative agencies with statewide jurisdiction cannot exercise judicial power, and where the order of such an agency is drawn in question before a court, the party challenging it must be given a trial de novo, the court saying:

"Therefore, if a body other than one of the enumerated courts makes findings of fact, on those findings determines that the provisions of a certain statute have been violated, and issues an order or renders a judgment which has the effect of depriving a person of a valuable property right, such action denies the aggrieved party the due process of law guaranteed to him by the state and federal Constitutions, unless such action by such body may be questioned in a court of law. It should always be kept in mind that the evil of administrative action which must be guarded against is not the fact-finding power, but the conclusiveness of the fact-finding power coupled with the order based on the findings made which would deprive a person of a property right. Such is the full exercise of judicial power, and such power in this state can be exercised only by one of the enumerated courts." 123 P.2d at page 466.

We have considered the varying views expressed by other courts as to the finality of the findings of administrative agencies and the scope of the review thereof by the courts. In re McInerney, 47 Wyo. 258, 34 P.2d 35; Udall v. Severn, 52 Ariz. 65, 79 P.2d 347; State ex rel. O'Neil v. Hall, 57 Ariz. 63, 110 P.2d 960; Larsen v. Seneca Independent School Dist., 50 S.D. 444, 210 N.W. 661; Annotations, 56 A.L.R. 283 et seq., 5 A.L.R.2d 675.

■ This court has heretofore recognized that where either constitutional or vested property rights are involved the judicial department of the government must afford a remedy for the protection of such rights. A party claiming that such a right has been denied or impaired by the action of either the legislative or executive agencies of the state, is constitutionally entitled to a judicial inquiry sufficient in scope to afford adequate relief. This court said, in In re Sharp, 15 Idaho 120, 96 P. 563, 18 L.R.A.,N.S., 886, and in Young v. Board of County Commissioners, 67 Idaho 302, 177 P.2d 162, that appeals are statutory and that if the legislature did not provide for an appeal, no right of appeal exists. In In re Sharp the court was discussing appeals from probate courts. In the Young case the court was considering appeals from the board of county commissioners. The language used in both cases would be appropriate to the application of § 20, Art. 5, of

the constitution, which leaves the matter of appeals to the district court discretionary with the legislature, not to § 13, Art. 5.

In the following cases this court has recognized the authority of the legislature to clothe administrative officers, boards or commissions with quasi-judicial power. The opinions reveal that the court in so holding relied upon the fact that the statutes conferring such power also provided for an adequate judicial review. In re Inman, 8 Idaho 398, 60 P. 120; Boise Irr. & Land Co. v. Stewart, 10 Idaho 38, 77 P. 25, 321; Raaf v. State Board, etc., 11 Idaho 707, 84 P. 33; Speer v. Stephenson, 16 Idaho 707, 102 P. 365; Barton v. Schmershall, 21 Idaho 562, 122 P. 385; Neil v. Public Utilities Commission, 32 Idaho 44, 178 P. 271; State v. Adair, 49 Idaho 271, 287 P. 950; Twin Falls Canal Co. v. Huff, 58 Idaho 587, 76 P.2d 923; Ada County v. Bottolfsen, 61 Idaho 64, 97 P.2d 599.

In Orr v. State Board of Equalization, 3 Idaho 190, 28 P. 416, no method of appeal being provided, the court held that writ of review was available to an aggrieved taxpayer. In State v. Reed, 3 Idaho 554, 32 P. 202, it was held that where the statute failed to provide for an appeal from final judgment of the district court, the supreme court will entertain a writ of error, or other proper writ, to review the judgment under authority of Art. 5, § 9, of the constitution.

In State Insurance Fund v. Hunt, 52 Idaho 639, 17 P.2d 354; and Haines v. State Insurance Fund, 65 Idaho 450, 145 P.2d 833, the court noted that the statute authorizing the making of an award of the industrial accident board, a judgment in the district court, expressly provided that the judgment is not subject to appeal. The court nevertheless held that the district court could take testimony to determine the amount due on the award and that the claimant presenting it was the real party in interest.

In Johnson v. Diefendorf, 56 Idaho 620, 57 P.2d 1068, the court held that sections of the sales tax law, conferring judicial powers on the commissioner of finance and attempting to deny to the aggrieved taxpayer the right to apply to the courts for relief, were unconstitutional.

In In re Edwards, 45 Idaho 676, 266 P. 665, the court held the legislature could not confer judicial powers upon the board of commissioners of the Idaho state bar.

In Joy v. Winstead, 70 Idaho 232, 215 P.2d 291, the court was concerned with the power of the district court to stay an order of the public utilities commission. The court specifically recognized that even in such a case where the constitution authorized the legislature to provide the procedure and limit the conditions and scope of appeal, a party claiming constitutional

rights have been impaired, cannot be denied judicial relief. It was there said:

"Thus, no right of appeal to the District Court now exists, but the accepted view, in the absence of barring constitutional or statutory inhibition, is that due process requires that courts stay an order of a commission; i. e., regulatory body, if enforcement thereof may result in confiscation and irreparable loss, until the final adjudication, through appropriate channels, of the correctness of the order. [Cases.]

"The correct concept is that as to the substance; i. e., fixing a just rate, the Commission's determination of rates must be concluded before judicial *review* may be invoked, which means hearing and either denial of or conclusion of a rehearing, then appeal or other appropriate invocation of the reviewing judicial process which must be sufficiently comprehensive and searching to protect all constitutional rights." 70 Idaho at page 238, 215 P. 2d at page 293.

■ It must be conceded that under our constitution parents have a right to participate in the supervision and control of the education of their children. True, the constitution vests the legislature with plenary power as well as a specific mandate to provide for the education of the children of the state, Art. 9, § 1, and the board of education with general supervision of the public school system, Art. 9, § 2, but it cannot seriously be urged that in clothing the legislature and the board with such powers the people transferred to them the rights accorded to parenthood before the constitution was adopted. By Art. 1, § 21, such rights were retained by the people.

"The right of a parent to the custody, control, and society of his child is one of the highest known to the law. The family is a unit of society and is so recognized by the state. The parents of children are recognized as their natural guardians, and the presumption is that they are fit and proper persons to exercise that trust. It is incumbent upon him who seeks to invade the home and remove a child from its protection, and from the custody of its natural guardians to shows facts sufficient to justify his action under the law. Parents are not required in the first instance to take upon themselves the burden of proving their fitness to have the care of their children, or that they are properly exercising their parental control. The fact that the one seeking to justify the detention of a child is an officer of the state and superintendent of one of its training schools, in no way relieves him from the burden of showing facts which justify his action, in a case where parents are claiming their right to the child. Before the

state will take a child from its parents and commit it to one of its institutions, it takes upon itself the burden of showing the existence of facts and conditions to justify its intervention." Martin v. Vincent, 34 Idaho 432, at pages 435–436, 201 P. 492, at page 493.

" * * * In the American concept, there is no greater right to the supervision of the education of the child than that of the parent. In no other hands could it be safer.

\* \* \* \* \* \*

" 'The American public school is historically an extension of the home. Although the legal control of the education function resides in the state, the tradition of local participation in the educational process is so strong that the general procedural pattern in forty-six of the states delegates to the state responsibility for general planning and appraising but places the responsibility for the actual execution of the plan with the community. The assumption of control over the education function by the state is a specific delegation of power by a public act of the citizens to the individual state and even on a state level represents in a large sense a partnership between the parents and the state. This partnership necessitates the active interest and intelligent participation of parents in the educational program.' " Andrus v.

Hill, 73 Idaho 196, at pages 200–201, 249 P.2d 205, at pages 207–208.

■ The district court did not err in construing the statutory provision for appeal as authorizing a trial de novo. We are not to be understood as holding that a trial de novo is necessary in all cases for the protection of such parental rights. We hold only that administrative decisions cannot be vested with such finality as to deny to the judicial department its power to afford protection of vested property and constitutional rights. 42 Am.Jur., Public Administrative Law, §§ 187, 188; 73 C.J.S., Public Administrative Bodies and Procedure, § 161.

On the merits, the record made before the board as supplemented upon the trial shows facts substantially as follows: There were seventy-one resident electors in the Big Butte area. Sixty-nine of these signed the petition. A witness, explaining the want of the signatures of the other two electors, stated they were not at home on the day the petition was circulated. This same witness was a member of the Idaho County reorganization committee at the time the schools of the county were being reorganized, and when district No. 241 was created. He testified to the vote on the plan in the original districts, parts of which now constitute the area involved herein. The vote against reorganization was: Big Butte, 39 to 1; Hopewell, 100%; Winona, 100%; Red Rock, 100%.

The school plant of Big Butte consists of a one-room, frame school building and an adjoining frame building used as a gymnasium, and two outside toilets. The gymnasium building was acquired and moved onto the school site by the residents at their own expense after district 241 had taken over the area. It is conceded that the school facilities are not modern, but are comparable to other outlying school plants in district 241. The school has one teacher with 36 pupils in the area of school age, from grades one through eight, and a prospective increase in that number to 47 for the year 1959–60. The school buildings are located 21 miles from Grangeville, where the high school and other major facilities of district 241 are located. The road to Grangeville is not good for winter travel and is sometimes closed. Nezperce, in district 302, is the location of the high school and other facilities of that district, and is 11 miles from the Big Butte school. The road to Nezperce is better than the Grangeville road and is always open to winter travel. District No. 302 has adequate room and facilities to receive and provide schooling for the 7th and 8th grades and high school students from Big Butte. The plan, in the event the petition were granted, is to take the Big Butte 7th and 8th grade and high school students to Nezperce by bus. This would effect a decrease in the average daily attendance at Big Butte, so that one teacher could give better service to those remaining until further expansion and an additional teacher is required and can be supplied. None of the high school students of Big Butte has been attending high school at Grangeville. All of them have been attending high school in other surrounding districts because of road conditions and the distance to Grangeville.

From this the court properly concluded that the best interests of the students of the Big Butte area would be served by making the change. As to the schools, it was shown that the officers of district 302 are willing to have the Big Butte area annexed to their district; that the Big Butte area will not be a financial burden to that district, but will pay its own way. The board found that the transfer would be a financial handicap to district 241. That district has voted a bond issue of $1,164,000, and has outstanding bonds in the sum of $30,000, a bonding capacity of $1,275,000, leaving unused bonding capacity of $80,000, which would be reduced to $40,000 by the removal of the Big Butte area. It has an annual operational budget of $490,000. It receives in revenue from the Big Butte area approximately $4,746 per annum over and above the cost of the operation of the school facilities in that area. Considering this loss of revenue and bonding capacity, in relation to the total operating revenue and bonding capacity of the district, it is apparent the court was correct in its conclusion that no unnecessary financial hard-

ship would be imposed upon district No. 241 by the severance of the Big Butte area. The board did not find that any "financial hardship" would be placed upon No. 241. Its finding is that it "would be a financial handicap" to district 241. The statutory concern is "that the proposed change shall not place unnecessary financial hardship upon the affected districts". By the use of the word "unnecessary" it is evident the legislature did not intend to forbid a change in boundaries in a case where a comparitively unimportant "financial handicap" to one of the districts would result.

The appellant further urges that the judgment provides for the annexation of non-adjacent territory to school district No. 302, and cites In re Gooding County Commissioners, 77 Idaho 505, 295 P.2d 695, 699, holding that school districts must consist of compact and contiguous bodies of land. This case is not a parallel to that. The court there said "a district may be created of any desired shape or plan, it cannot be gerrymandered in a prejudicial manner or merely for the purpose of including the places of residence of persons desiring to be included and excluding those of persons desiring to be left out." Here there is no attempt at gerrymandering. The entire Big Butte area, a compact territory, is to be annexed to district No. 302. It does not border 302 along its longer side. It is contiguous only on one end, and would be appended to 302 as a peninsula is attached to a larger body of land. However, the testimony is that Nezperce is the natural trading and shopping center for the residents of the Big Butte area and that they have their church, lodge and social affiliations there. For definition of compact school district see, People ex rel. Tudor v. Vance, 374 Ill. 415, 29 N.E.2d 673, and People v. Deatherage, 401 Ill. 25, 81 N.E. 2d 581.

The reason for seeking the change, given by a number of the Big Butte residents in their testimony both before the board and upon the trial, was that they desired to have their homes and property in, and a part of, the school district where their children attend school, so that their property and school taxes would directly support the education of their children, and they, as parents, would share in the supervision and control of that education. This is a right which should not be denied these parents in the absence of some overriding consideration, and none such appears.

The board also assigns as error the provision of the judgment, "The Board shall order such changes and transfers of funds as shall be equitable to the school districts involved." This part of the judgment is not supported by evidence and respondents make no effort to sustain it, contending only that it is harmless in that it does not undertake to direct or control the duty or discretion of the board in that regard.

616

We conclude that the quoted sentence should be stricken from the judgment and it is so ordered. As so modified, the judgment is affirmed.

No costs allowed. Chicago, M. & S. P. Ry. Co. v. Public Utilities Commission, 47 Idaho 346, 275 P. 780.

KEETON, C. J., PORTER and SMITH, JJ., and BAKER, D. J., concur.

McQUADE, J., not participating.